UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **HALIMO FARAH ALI**, | Case No. 3:15-cv-00632-KI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security**, | |
| Defendant. | |

Lisa R.J. Porter
JP Law PC
5200 SW Meadows Rd., Ste. 150
Lake Oswego, OR 97035

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Page 1 - OPINION AND ORDER

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Halimo Farah Ali brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for a finding of disability.

## BACKGROUND

Ali filed applications for DIB and SSI on September 7 and December 19, 2011, alleging disability beginning April 15, 2010. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Ali, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on November 19, 2013.

On December 26, 2013, the ALJ issued a decision finding Ali not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on March 4, 2015.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ determined Ali's date last insured was September 30, 2013. He concluded she had the following severe impairments: small fiber neuropathy, degenerative disc disease, and anemia. The ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Despite these impairments, the ALJ concluded Ali retains the residual functional capacity ("RFC") to perform less than the full range of light work as defined in the regulations because she needed a sit/stand option with the ability to change positions every 20 minutes. In addition, the ALJ noted Ali has a limited ability to read English.

## FACTS

Ali, a 42-year old Somali woman with at least a high school education, stopped working as a cashier at a grocery store in 2008 due to pain. She has past relevant work at Marshalls Department Store.

She began seeing Timothy A. Joslin, M.D. at least as early as May 2008, and returned to him regularly for examination and treatment of her low back pain and burning pain in her thighs and legs. Dr. Joslin diagnosed Ali with idiopathic small fiber neuropathy and treated her at various times with Neurontin (gabapentin), nortriptyline, vitamin B supplements, Lyrica, and a topical treatment called Ketamine HCL. The medications seemed to help in the early years, but

Page 5 - OPINION AND ORDER

then the side effects seemed to outweigh the benefits and she weaned herself off everything but the nortriptyline. In January 2013, Ali noted that the medications helped her sleep, but did not help her pain; massage did help.

    Dr. Joslin sent Ali to the neuromuscular clinic in November 2013 to see Julie Khoury, M.D. Dr. Khoury noted Ali had initially been seen in the neuromuscular clinic in 2009, reporting burning pain in her feet for more than ten years. At that time, the work-up revealed reduction in epidermal nerve fiber density and B6 and B12 deficiencies. In 2010, an MRI showed Ali's right lower calf had fatty replacement of muscle in the soleus and fatty infiltration of gastrocnemius. At this visit in 2013, Ali reported a decline in her health. She found walking difficult and required the assistance of a family member for stability. She reported a sedentary life due to pain, but found her medications to be too sedating. Upon examination, Dr. Khoury noted normal muscle tone, with mild right calf hypertrophy, and strength limited by pain but able to demonstrate at least 4/5 in all major muscle groups. The doctor thought she may have a myopathy, recommended pool based therapy to remain as active as possible, and continued treatment of her symptoms with gabapentin. A muscle biopsy revealed a hereditary muscle disease manifesting with myalgias; the doctor encouraged mild to moderate regular exercise.

    After her hearing and the ALJ's decision, at a follow-up appointment in February 2014, Ali asked what else there was to be done for the burning in her feet, which was worse when she wore shoes. She was referred to physical therapy and directed to get some soft arch supports.

**DISCUSSION**

Ali challenges the ALJ's decision to question her credibility, give her treating physician's opinion less weight, reject her lay witnesses' observations, and find her capable of performing light work.

I.   Ali's Credibility

Ali testified her twelve-year-old nephew lived with her, because her culture provides for a sibling to lend a child when a person is unable to have children of her own.  She lived in section 8 housing, obtained financial assistance from her family members to pay her bills, her nephew performed "easy things" around the house for her, and other family members helped with the bigger chores.  Tr. 42.  She could prepare simple meals, but she spent her days inside lying on her bed or on the couch.  She left the house to go to medical appointments, either driving her own car or family members took her.  She felt pain in her back and hips, experienced dizziness when standing, felt burning pain in her right leg and she tried not to wear shoes due to the burning pain.  The ALJ noticed on two occasions that Ali looked tired, and Ali testified the pain made it difficult for her to sleep.  She thought she could stand and walk around about 10 or 15 minutes before needing to sit down.

The ALJ found Ali's testimony not entirely credible because she reported to her doctors some improvement of her pain on a number of occasions, and in April 2013 she noted the pain medications allowed her to perform her activities of daily living.  He also relied on the lack of objective findings–pointing out her normal sensation to light touch and pinprick, 5/5 motor strength, normal gait, and full range of motion in her hips and knees.  Finally, he relied on Ali's

ability to care for herself, prepare simple meals, complete household chores, shop with assistance, take classes to learn English, and exercise.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ pointed to two medical appointments in which Ali demonstrated normal functioning on examination, one in January 2011 and another appointment in July 2012.

Page 8 - OPINION AND ORDER

On a number of other occasions, however, Ali's physicians documented objective findings demonstrating her condition. For example, early in 2010, Ali's right lower extremity was larger and more tender compared to the left (Tr. 416-17), remaining weak compared to the left into 2013 (Tr. 570), with an inability to perform toe raises on either foot (Tr. 574). In 2013 Dr. Khoury noted an antalgic gait and motor strength testing of 4/5 (Tr. 634).[1]

Nevertheless, even if I were to accept that Ali's physical examinations did not always reflect a debilitating physical condition, this reason alone cannot support the ALJ's credibility analysis. The ALJ's reliance on Ali's daily activities and the few occasions when she said medications and massage helped are insufficient to support the remainder of the ALJ's credibility analysis. Daily activities could be relevant for one of two purposes. A claimant's daily activities might be so substantial such that they equate to an ability to work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Alternatively, the activities might be inconsistent with testimony purporting to be limited in some way. *Id.* Neither situation is applicable here. Ali testified consistent with her reports of pain that she was able to make small, simple meals. She testified her nephew helped her with the easy things, and other family members helped with larger chores. She testified she did not leave the house, except to attend medical appointments or to shop so long as she had a family member with her to assist her.

Additionally, although the ALJ identified a handful of occasions, particularly early in her treatment, when Ali reported medications had helped, he ignored other instances when she

---

[1] Many of Ali's other examples of objective findings supporting her testimony are contained in medical records created in 2014, after the ALJ's decision. These records, which were submitted to the Appeals Council, might be relevant to a question of whether the more recent evidence renders the ALJ's opinion unsupported by substantial evidence, but that is not an argument raised by Ali.

Page 9 - OPINION AND ORDER

reported:  constant burning (Tr. 417), constant pain with itchiness (Tr. 394), constant pain (Tr. 389), medications do not help (Tr.490), whole body pain and burning in her back (Tr. 489), burning pain in her legs (Tr. 528), unable to make the pain go away (Tr. 584), medications helped her sleep, but did not help her pain (Tr. 581), pain the same, limited in her ability to stand, but able to perform her activities of daily living (Tr. 580), right calf pain (Tr. 573), and exercise made the pain worse (Tr. 569).

The ALJ's did not support his decision finding Ali's testimony less than credible with clear and convincing reasons supported by substantial evidence in the record.

II.     Medical Evidence

Dr. Joslin treated Ali for at least five years by the time of the ALJ's decision.  He opined on two occasions that her condition affected her ability to work and stand for long periods of time (Tr. 554) and that she was unable to work (Tr. 387).  In February 2013, he completed a lengthy function report in which he opined Ali would have substantial difficulty with stamina, pain or fatigue working full time at the sedentary or light level.

The ALJ again referenced Ali's reports to her doctors of some improvement with medication and massage, the normal findings on physical examination, Ali's daily activities, and that Dr. Joslin indicated his report was based primarily on Ali's subjective report.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn*, 495 F.3d at 632.  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and

Page 10 - OPINION AND ORDER

convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

While a physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible," I have found the ALJ did not properly discount Ali's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, to the extent the ALJ relied on Ali's early reports to her doctors that medication and massage helped, or on her daily activities, I have found those reasons unsupported by substantial evidence in the record. The only rationale remaining to support the ALJ's decision is the fact that findings on physical examination were normal. Given that Dr. Joslin had been treating Ali for approximately five years at the time he gave his opinion, that even the non-examining state agency consultant agreed Ali would have a standing/walking limitation, and that the ALJ did not consider the possibility of normal examination findings with a diagnosis of small fiber neuropathy,[2] I find the ALJ failed to give specific and legitimate reasons supported by substantial evidence to give less weight to Dr. Joslin's opinion.

---

[2]Ali points to an article explaining, "One of the hallmarks of a pure small fiber neuropathy is a normal or near normal physical and neurologic examination. The coordination, motor, and reflex examination will be normal. Light touch, vibratory sensation, and proprioception also may be normal, resulting in diagnostic confusion in some situations." Alexandra Hovaguimian & Christopher Gibbons, *Diagnosis and Treatment of Pain in Small Fiber Neuropathy*, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3086960/.

III.    Lay Testimony

Two of Ali's relatives submitted written testimony identifying some of Ali's limitations. Abdullahi Saloud Barkhadle reported that he and family members helped Ali with chores (including laundry, vacuuming, ironing, and preparing meals), that she prepared sandwiches and tea but could not stand long, she did not go outside unless she had an appointment or needed to go shopping, and that she had no interest in hobbies or social activities due to pain. Similarly, Ruun Barkhadle reported that she or her daughters helped with cleaning Ali's house, vacuuming, doing the laundry, and cooking.

The ALJ gave "some weight" to these statements, but noted (again) the fact that Ali reported "some improvement" with medication and massage, normal findings on physical examination, and Ali's own reports that she is able to care for herself, prepare simple meals, perform household chores and shop with assistance, take English classes, and exercise. Tr. 26.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Not only did the ALJ fail to explain how he gave these statements "some weight," when he appeared to give them no weight, but none of the reasons supporting the ALJ's decision to disregard these statements is supported by the evidence. Ali's reports about her activities are consistent with the statements made by her lay witnesses: she could prepare simple meals and care for herself, but required assistance performing household chores and shopping. The fact that she took English classes is simply not inconsistent with the lay witness' observations, and the references to exercise were

when she hurt herself stretching (Tr. 559) and, on another occasion, when she reported it hurt to exercise (Tr. 569).

IV.    RFC and Remedy

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *Id.* Here, the RFC did not contain all of the functional limitations that would be directed upon acceptance of Ali's testimony and Dr. Joslin's opinion. As a result, the ALJ's conclusion that Ali can perform other work in the national economy is not supported by the evidence.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court has discretion to credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Alternatively, the court can remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Having reviewed the record, I find the Ninth Circuit's three-part test is met; this is the "rare" case where a remand for a finding of disability is appropriate. The ALJ made legal errors, there are no issues to be resolved before a determination of disability can be made, and it is clear

Page 13 - OPINION AND ORDER

from the record the ALJ would be required to find Ali disabled after crediting the evidence. The VE testified that an insignificant number of jobs would be available to a person with the lifting limits and postural limitations, along with exposure limitations, identified by Dr. Joslin.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

DATED this     27th     day of April, 2016.


                                                       /s/ Garr M. King
                                                     Garr M. King
                                                     United States District Judge